IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-01188-MEH

MOHAMMED AL GHAREEB,

Plaintiff,

v.

BOARD OF TRUSTEES AT THE UNIVERSITY OF NORTHERN COLORADO,

Defendant.

---

**ORDER**

---

**Michael E. Hegarty, United States Magistrate Judge**.

Plaintiff Mohammed Al Ghareeb, proceeding pro se, alleges retaliation, abuse of power, and due process violations by Defendant. ECF 5. Before the Court is Defendant's Motion to Dismiss ("Motion"). ECF 13. The Motion is fully briefed, and the Court finds that oral argument would not materially assist in its adjudication. For the reasons that follow, the Motion is granted.

## BACKGROUND

For the purposes of this ruling, the Court accepts as true the factual allegations—as opposed to any legal conclusions, bare assertions, or conclusory allegations—that Plaintiff raises in his Complaint. *See generally Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (accepting as true a plaintiff's factual allegations for purposes of Fed. R. Civ. P. 12(b)(6) analysis). The Court also considers Plaintiff's allegations from his previous lawsuit.

## I. Past Federal Lawsuit (2019)

Plaintiff was a Ph.D. student at Defendant's institution during the seven-year period between the Spring of 2013 to Spring of 2020. ECF 5 at 4. During the Spring of 2014, Plaintiff was a student of professor Dr. Trent Lalonde. *Al Ghareeb v. Bd. of Trustees at the Univ. of N. Colo.*, 849 F. App'x 746, 747 (10th Cir. Mar. 16, 2021); *see also Al Ghareeb v. Bd. of Trs. at the Univ. of N. Colo.*, No. 19-cv-00228-STV, 2020 WL 10320906 (Apr. 14, 2020) ("*Al Ghareeb I*"). At some point, Plaintiff complained to Defendant of mistreatment by Dr. Lalonde in that class. *Id*. Plaintiff and Defendant entered into a written agreement that Dr. Lalonde would not have further academic interactions with Plaintiff. *Id*.

In January 2017, Plaintiff took a two-part exam which was required to proceed in the Ph.D. program. *Id*. Part one assessed theory and part two tested method. *Id*. He failed the theory portion. *Id*. After failing, Plaintiff raised concerns about the exam to Defendant. *Id*. First, he complained that the written agreement prohibiting academic contact from Dr. Lalonde was violated. *Id*. Plaintiff claimed Dr. Lalonde created the exam and was one of two individuals responsible for grading it. *Id*. In addition, Plaintiff believed that the exam "was to be created and graded by a panel of four to five professors," as specified in the department manual. *Id*. Plaintiff's other primary concern was how the first part of the exam had focused on methodology instead of theory. *Id*. Plaintiff was purportedly "anxious because he had prepared for the theory portion and the method portion was supposed to be on the second [part] of the exam." *Id*.

Defendant told Plaintiff he could retake the exam. *Id*. Plaintiff believed this offer was unfair and never retook the exam. *Id*. Plaintiff then initiated a lawsuit against Defendant alleging retaliation, national origin discrimination, and breach of contract. *Id*. at 747-48. After Plaintiff's Third Amended Complaint, Defendant moved to dismiss for failure to state a claim. *Id*. at 748. The

district court granted the motion and dismissed the federal law claims. *Id*. The district court declined to exercise supplemental jurisdiction over the state-law breach of contract claim. *Id*. Plaintiff appealed the dismissal of the federal law claims to the Tenth Circuit, which affirmed the decision. *Id*. at 750. The Tenth Circuit explained that Plaintiff's federal law claims were not plausible because there was not enough context or detail included in the Third Amended Complaint.[1] *Id*. at 749-750.

## II. Present Lawsuit

The present case is based on events that occurred after initiating his first lawsuit. ECF 5 at 4. Plaintiff explains that he was without an academic advisor sometime after the initial lawsuit.[2] *Id*. Without an academic advisor, Plaintiff was unable to register for classes for the Spring of 2020 semester.[3] *Id*. Plaintiff informed the Dean of the Graduate School, Dr. Cindy Wesley, of the registration hold. *Id*. She instructed an Associate Dean, Dr. Corey Pierce, to register Plaintiff. *Id*. According to Plaintiff, he "filled out documents and got approved." *Id*. He was then sent a confirmation email that stated he would be registered using a "Reduced Course Load" form. *Id*. Plaintiff claims that the email explained the Department of Homeland Security was notified to process his student visa to reflect his status. *Id*. at 4-5.

---

[1] Plaintiff's Complaint for this lawsuit claims he never commenced a civil action for breach of contract in Colorado state court.

[2] In his Response to the Motion to Dismiss that Defendant had filed in *Al Ghareeb I*, Plaintiff states that his academic advisor withdrew after several discussions in which Plaintiff explained he would "not retake the comprehensive exam." *Al Ghareeb I*, ECF 61 at 4.

[3] In the Third Amended Complaint of *Al Ghareeb I*, Plaintiff states that his academic advisor withdrew in January of 2020 and that Plaintiff was on track to finish by Fall of 2020. *Al Ghareeb I*, ECF 54 at 17-18.

As claimed, Defendant emailed Plaintiff on May 15, 2020 to notify him of four things: first, that he was illegally residing in the United States; second, he was not registered in the University; third, that his student visa was terminated; and fourth, that he could be deported due to his illegal presence. *Id*. at 5. By this point, Plaintiff already had left the United States for Covid-19 reasons. *Id*. Plaintiff emailed both Dr. Pierce and Dr. Wesley about this message from Defendant. *Id*. Only Dr. Pierce replied. *Id*. He told Plaintiff that from his understanding, Dr. Wesley was handling his student visa and registration requests. *Id*.

Plaintiff makes three claims: First Amendment retaliation, abuse of power, and violation of Fourteenth Amendment due process. *Id*. at 5, 7, 8. He asks for lost wages, lost opportunity costs, and payment for suffering. *Id*. at 10.

## LEGAL STANDARDS

### I. Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015) (recognizing that federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Id*. (quoting *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013)). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere [conclusory] allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See*

*Pueblo of Jemez*, 790 F.3d at 1151. Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id*. at 1002-03 (citations omitted). The present Motion is a facial attack on subject matter jurisdiction; therefore, the Court will accept the truthfulness of the Complaint's factual allegations.

## II. Fed. R. Civ. P. 12(b)(6)

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare

assertions, or merely conclusory. *Id*. at 679. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

## III. Treatment of a Pro Se Plaintiff's Complaint

A pro se plaintiff's "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). "Th[e] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Smith v. U.S.*, 561 F.3d 1090, 1096 (10th Cir. 2009) (quoting *Whitney v. N.M.*, 113 F.3d 1170, 1173-74 (10th Cir. 1997)). The Tenth Circuit interpreted this rule to mean, if a court "can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, [it] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) (quoting *Hall*, 935 F.2d at 1110). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Garrett*, 425 F.3d at 840 (quoting *Hall*, 935 F.2d at 1110).

# ANALYSIS

## I. 12(b)(1) Dismissal – Lack of Subject Matter Jurisdiction

The Eleventh Amendment precludes lawsuits against arms of the state. *Colby v. Herrick*, 849 F.3d 1273, 1276 (10th Cir. 2017). To determine if an entity is an arm of the state, courts engage in a two-part inquiry:

> "[T]he court first examines the degree of autonomy given to the agency, as determined by the characterization of the agency by state law and the extent of guidance and control exercised by the state. Second, the court examines the extent of financing the agency receives independent of the state treasury and its ability to provide for its own financing. The governmental entity is immune from suit if the money judgment sought is to be satisfied out of the state treasury."

*Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (10th Cir. 2000) (citing *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 574–75 (10th Cir. 1996)).

Eleventh Amendment immunity is not absolute. *Arbogast v. Kan., Dep't of Lab.*, 789 F.3d 1174, 1181 (10th Cir. 2015). There are three exceptions to its application. *Id*. "First, a state may consent to suit in federal court. [] Second, Congress may abrogate a state's sovereign immunity by appropriate legislation when it acts under Section 5 of the Fourteenth Amendment. [] Finally . . . a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief." *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012); *see also Arbogast*, 789 F.3d at 1181. Federal question jurisdiction does not override Eleventh Amendment immunity. *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1195 (10th Cir. 1998). "[T]he Supreme Court has interpreted the [Eleventh] Amendment to apply to federal question suits against a State brought in federal court by the State's own citizens." *Id*. (citing *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261 (1997)).

A. Arm of the State

The Tenth Circuit has "consistently held that state colleges and universities are arms of the state[.]" *Sturdevant*, 218 F.3d at 1170-71. Therefore, these entities "enjoy[] Eleventh Amendment immunity[.]" *Id*. "[T]he Colorado Supreme Court concluded that UNC is an arm of the state[.]" *Id*. at 1167 (citing *Graham v. State*, 956 P.2d 556, 562, 565-66 (Colo. 1998). Eleventh Amendment immunity may be voluntarily waived through participation in a particular federal program. *Davis v. California*, 734 F. App'x 560, 564 (10th Cir. 2018); *see also Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 620 (2002). In the Tenth Circuit, a violation of "section 504 of the Rehabilitation Act [][], title IX of the Education Amendments [][], the Age Discrimination Act [][],

title VI of the Civil Rights Act [][], or the provisions of any other Federal statute prohibiting discrimination by recipient of Federal financial assistance[]" waives Eleventh Amendment immunity. *Id*. A plaintiff *must allege* a violation of one of these acts in order to meet his burden and show a waiver. *Id*. (emphasis added).

Plaintiff's Complaint fails here for several reasons. First, neither the Complaint nor the Response allege a violation of any statute prohibiting discrimination which would waive immunity. Plaintiff's makes no allegations in this lawsuit, as opposed to his last, of facts concerning discrimination. Second, Plaintiff does not identify a federal program that Defendant participates in which would waive immunity. Plaintiff points to Defendant's 2023 fiscal year budget and student funding opportunities as federally financed. ECF 15 at 2. The Court has reviewed information about these programs, and it appears that Defendant's funding is primarily from the State of Colorado. Finally, Congress that has not abrogated Defendant's Eleventh Amendment immunity in relation to Plaintiff's claims. All of these factors indicate that Defendant is indeed an arm of the state.

B. *Ex parte Young* does not apply

The *Ex parte Young* exception permits lawsuits against state officials in their official capacities. *Hill v. Kemp*, 478 F.3d 1236, 1255-56 (10th Cir. 2007) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Litigants may not sue an individual state agency, only an individual. *Id*. "[F]or the *Ex parte Young* exception to apply, plaintiff[] must show that [he] [is] . . . suing state officials rather than the state itself[.]" *Muscogee (Creek) Nation*, 669 F.3d at 1167. The relief requested must be prospective and "the complaint must allege an ongoing violation of federal law." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). If a plaintiff is seeking retrospective relief, such as a declaratory judgment of a past violation of federal rights, the exception does not apply.

*Buchwald v. Univ. of N.M. Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998). Requests for monetary damages are barred by the exception. *Hill*, 478 F.3d at 1255.

In *Buchwald*, the Tenth Circuit explained that the plaintiff could not "subject [University of New Mexico School of Medicine], its Regents, or the Committee on Admissions to suit because they are state agencies[.]" *Buchwald*, 159 F.3d at 496. The plaintiff's lawsuit could only proceed against the state officials. *Id*. at 495-96. The plaintiff alleged an "ongoing constitutional violation" and requested prospective relief. *Id*. at 496. Specifically, the plaintiff sought a "future injunction ordering her admission" into the school. *Id*. The plaintiff's other claims remained barred by Eleventh Amendment immunity though. *Id*. at 494-95. For example, the plaintiff sought a declaration of past wrongdoing by defendant. *Id*. Because that relief would be retrospective, the *Ex parte Young* exception was inapplicable. *Id*. Therefore, the defendant still enjoyed Eleventh Amendment immunity for the claims requesting retrospective relief. *Id*.

Here, the *Ex parte Young* exception does not apply for similar reasons. First, Plaintiff does not allege an ongoing constitutional violation. ECF 5 at 5. Second, Plaintiff requests retrospective relief and monetary damages. *Id*. Finally, Defendant is the University, which is a state agency. *Id*. Plaintiff names no individual as a defendant in his Complaint or Response. The Response even describes Defendant as an entity, indicating Plaintiff's understanding it is not a natural person. ECF 15 at 4. Therefore, the *Ex parte Young* exception does not apply for similar reasons articulated in *Buchwald*.

C. <u>Summary</u>

Defendant, a public university, is an arm of the State of Colorado. As such, it is immune from this suit. There is no exception to Eleventh Amendment Immunity by which this Court could assert jurisdiction over Defendant.

## II. 12(b)(6) Dismissal for Failure to State a Claim

Application of the Eleventh Amendment presents a jurisdictional defect, which by itself warrants dismissal. Nevertheless, for the sake of thoroughness, the Court considers Defendant's Rule 12(b)(6) arguments as well.

### A. First Amendment Retaliation

Three elements define First Amendment retaliation. *Van Deelen v. Johnson*, 497 F.3d 1151, 1155-56 (10th Cir. 2007). "The plaintiff must show that (a) he [] was engaged in constitutionally protected activity; (b) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (c) the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Id*. (citing to *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)). Filing a lawsuit is a constitutionally protected activity, which satisfies the first element. *Id*. at 1156. The second element requires a plaintiff to allege enough context to show that the defendant's actions would chill a person of ordinary firmness. *Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir. 2001). "The focus, of course, is upon whether a person of ordinary firmness would be chilled, rather than whether the particular plaintiff is chilled." *Id*. A plaintiff's persistence in an activity is evidence that he was not chilled from engaging in an exercise of the First Amendment. *Id*. ("[The plaintiff]'s persistence in maintaining his website offers some evidence that [the defendant]'s actions did not prevent such private speech."). The third element requires the plaintiff to include more than conclusory allegations. *Iqbal*, 556 U.S. at 678-69. It is met if the record contains evidence indicating a retaliatory motive. *Worrell*, 219 F.3d at 1213-14.

Plaintiff satisfies the first element and Defendant does not dispute this. ECF 13 at 9. However, the Court agrees with Defendant that Plaintiff fails to do so for the second and third

elements. *Id*. at 9-11; *see also* ECF 17 at 8-9. Plaintiff alleges that Defendant wanted to prevent him from filing the state-law breach of contract claim. ECF 15 at 6. He asserts that Defendant accomplished this by not registering Plaintiff for the Spring of 2020 knowing that it would cause his student visa to be terminated. *Id*.; *see also* ECF 5 at 5-6, 8. Plaintiff states it was impossible for him to file this claim through another person, such as an attorney. ECF 15 at 5. Plaintiff's conduct in his other legal matters shows otherwise and that he was not chilled by Defendant's "retaliation." Plaintiff continued to pursue his discrimination claim through an appeal to the Tenth Circuit. *See generally Al Ghareeb*, 849 F. App'x at 746. His appellate briefs were filed in July and August of 2020, two to three months after his student visa was terminated. *See* Appellant's Opening Brief, *Al Ghareeb*, 849 F. App'x 746 (10th Cir. 2021, Jul. 7, 2020) (No. 20-1178); Appellant's Reply Brief, *Al Ghareeb*, 849 F. App'x 746 (10th Cir. 2021, Aug. 27, 2020) (No. 20-1178). Furthermore, Plaintiff hired counsel for representation throughout his appeal proceedings. *Al Ghareeb*, 849 F. App'x at 746 n.1. His persistence shows he was able to file his state law claim on a pro se basis (if he chose to do so) or could have hired counsel to represent him instead (if he preferred). Nevertheless, Plaintiff has not satisfied the second element. As to the third element, Plaintiff's allegation that Defendant actions (or lack thereof) caused Plaintiff's student visa to be wrongfully terminated is too conclusory to support a plausible claim. *Iqbal*, 556 U.S. at 678-69. Therefore, Plaintiff's retaliation claim is dismissed.

B. Abuse of Power

"Article III of the Constitution permits federal courts to decide only 'Cases' or 'Controversies.'" *Laufer v. Looper*, 22 F.4th 871, 876 (10th Cir. 2022) (citing U.S. Const. art. III, § 2). "To establish a case or controversy, a plaintiff must possess standing to sue." *S. Furniture Leasing, Inc. v. YRC, Inc.*, 989 F.3d 1141, 1145 (10th Cir. 2021). Standing is a constitutional

prerequisite for a case or controversy. *Citizens for Resp. Gov't. State Pol. Action Comm. v. Davidson*, 236 F.3d 1174, 1181-82 (10th Cir. 2000). Three elements are required to establish standing: (1) plaintiff must have suffered an injury in fact; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) the injury is likely to be redressed by a favorable decision. *Looper*, 22 F.4th at 876 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 55, 560-61 (1992)). To satisfy the first element, an injury must be both "particularized" and "concrete." *Spokeo, Inc. v. Robinson*, 578 U.S. 330, 339-40 (2016). Particularized injuries must affect the plaintiff "in a personal and individual way." *Lujan*, 504 U.S. at 560; *see Spokeo, Inc.*, 578 U.S. at 339. Concrete injuries must "actually exist" and be "an injury in fact." *Spokeo Inc*, 578 U.S. at 339-40; *Looper*, 22 F.4th at 876 (quoting *Lujan*, 504 U.S. at 560). The alleged injuries cannot be abstract, conjectural, or hypothetical. *Id*.

Allegedly, Defendant acted unlawfully and committed an "abuse of power" by not registering Plaintiff for the Spring of 2020 semester. ECF 5 at 7-8. Plaintiff states that Defendant intentionally misrepresented his student visa status to ensure its termination. *Id*. at 8. Ultimately, Plaintiff leaves unclear on what legal authority his abuse of power theory is based. However, the claim fails for another reason. Plaintiff alleges only a hypothetical injury: deportation. Plaintiff had left the United States by the time he received notice of his student visa termination. On this set of facts, Plaintiff could not have been deported because of his physical relocation. Given that the abuse of process claim lacks standing, it is dismissed.

C. Fourteenth Amendment Due Process Claim

The Fourteenth Amendment protects against deprivations of life, liberty, and property without due process. *Couture v. Bd. of Educ. of Albuquerque Pub. Sch.*, 535 F.3d 1243, 1256 (10th Cir. 2008). Allegations of procedural due process deprivations must prove two elements: "that [the

plaintiff] possessed a constitutionally protected liberty or property 'interest such that the due process protections were applicable,' and that [the plaintiff] was not 'afforded an appropriate level of process.'" *Zwygart v. Bd. of Comm'r of Jefferson Cty., Kan.*, 483 F.3d 1086, 1093 (10th Cir. 2007) (quoting *Farthing v. City of Shawnee, Kan.*, 39 F.3d 1131, 1135 (10th Cir. 1994)). At the outset, courts must "determine whether due process requirements apply in the first place." *Bd. of Regents of State Colleges. v. Roth*, 408 U.S. 564, 570-71 (1972). To do this, courts "look not to the 'weight' but to the nature of the interest at stake." *Id*.

i. <u>Registration</u>

Generally, there is a property interest in continued enrollment that the Fourteenth Amendment protects. *Goss v. Lopez*, 419 U.S. 565, 574-75 (1975). By contrast, class registration is a de minimis property interest. *Tigrette v. Rector & Visitors of Univ. of Va.*, 137 F. Supp. 2d 670, 676 (W.D. Va. 2001). De minimis interests are not entitled to due process protection. *Id*.

According to Plaintiff, students attending Defendant's institution must have an academic advisor to register for classes. ECF 5 at 8. In this case, Plaintiff did not have an academic advisor, and for that reason his registration was put on hold. *Id*. Nevertheless, a student not having an academic advisor is not a due process violation. Plaintiff does not claim that his academic advisor was taken away from him.[4] Ultimately, the allegations do not show any wrongdoing by Defendant.

ii. <u>Student Visa</u>

Certain classes of foreign nationals may enter the United States "for fixed, temporary periods of time pursuant to a visa." *Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 892 F.3d 332, 336 (D.C. Cir. 2018); *see also Awuku-Asare v. Garland*, 991 F.3d 1123, 1126 (10th

---

[4] Again, Plaintiff's Response to the Motion to Dismiss that Defendant's filed in *Al Ghareeb I*, Plaintiff states that his academic advisor withdrew. *Al Ghareeb I*, ECF 61 at 4.

Cir. 2021). Individuals present on a student visa are "admitted for duration of status." 8 C.F.R. § 214.2(f)(5)–(6). These students must have a full course load to maintain status. *Id*. A full course load requires enrollment in an amount of credit hour that meets the student's specific educational or professional objectives. *Id*. If a student does not maintain status, he generally becomes removable. *Awuku-Asare*, 991 F.3d at 1126. Failure to maintain status need not be an affirmative act of the student. *Id*. at 1128-29 ("[N]o requirement that such failure be the fault of the visa holder[,] or the result of some affirmative action taken by the visa holder."). In addition, obtaining or continuing to hold a student visa are not constitutionally protected interests. *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972); *see also Does 1 through 16 v. U.S. Dep't of Homeland Sec.*, 843 F. App'x 849, 852 (9th Cir. 2021). There is "no constitutional right of entry to this country as a non-immigrant or otherwise." *Id*.; *see also Kerry v. Din*, 576 U.S. 86, 88 (2015) (explaining that an admitted and non-resident alien has no right of entry in the United States).[5]

In *Awuku-Asare*, the plaintiff was present in the United States through a student visa. *Id*. at 1125. The court held he failed to maintain his status by not maintaining a full course load even though he was incarcerated for thirteen months. *Id*. The plaintiff claimed that his failure to maintain status was due to his incarceration, rather than some affirmative act on his part. *Id*. He argued that "because circumstances beyond his control—his incarceration—caused the lapse in his status, he is not removable." *Id*. at 1124. The court explained that the Immigration and Nationality Act, 8 U.S.C. § 1227, clearly indicated that "a student visa holder who fails to comply with the conditions of his or her visa . . . is removable." *Id*. at 1129. Ultimately, the plaintiff was removable for failure to maintain a full course while incarcerated. *Id*. at 1126.

---

[5] In *Does 1 through 16*, the Ninth Circuit explained that even though classes had become only available online during the onset of the Covid-19 pandemic, the plaintiffs still failed to maintain status. *Does 1 through 16*, 843 F. App'x at 852.

In *Lee v. Mukasey*, 573 F.3d 1103, 1104 (10th Cir. 2008), the Tenth Circuit held that when a school ceases to exist, causing a student visa holder to attend an institution different than that listed on her visa, the student does not violate her status. *Id*. In that case, the plaintiff held a student visa that required her to attend a private school. *Id*. When the private school closed abruptly, the plaintiff began attending a public school. *Id*. The Tenth Circuit considered whether this change in attendance was an abandonment of studies. *Id*. at 1106. The court concluded that it was not, because the plaintiff was acted upon. *Id*. at 1107. In other words, the plaintiff reacted to the private school's action (ceasing operations) and did not abandon or violate her student visa. *Id*.

This Court finds that *Awuku-Asare* is persuasive. Plaintiff was present on a student visa. *See generally* ECF 5 and ECF 15. The Complaint indicates that his status needed to be updated to reflect his reduced course load. ECF 5 at 4-5. However, Plaintiff still failed to maintain status. As indicated by § 1227, it is the student's responsibility to comply with the student visa requirements. It is not the institution's responsibility. Plaintiff is removable for failing to comply with its conditions. Plaintiff appears to believe Defendant was responsible for managing his status. Regardless, it is clear from the statute that it was Plaintiff's responsibility. Even if this Court assumes Plaintiff was prevented from registering in courses, the Tenth Circuit's holding in *Lee* demonstrates that he could have begun attending another institution. Plaintiff's arguments are unpersuasive.

iii. Summary

Plaintiff fails to allege a Fourteenth Amendment due process violation on two grounds. First, he has not shown a property interest of registration for classes. Second, he has failed to show wrongdoing by Defendant regarding continuation of his student visa. Therefore, this Court dismisses Plaintiff's due process claims.

## III. No Leave to Amend

Dismissal of a case is a harsh remedy, and a pro se litigant's pleadings are to be construed liberally. Generally, a court may give such a litigant the opportunity to amend the complaint to cure a pleading defect. *Hall*, 935 F.2d at 1109-10; *Reynolds v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). However, a court may dismiss a complaint without an opportunity to amend if "it is patently obvious that plaintiff could not prevail on the facts alleged and allowing him an opportunity to amend his complaint would be futile." *Curly v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110).

In this case, the Court finds, as a matter of law, dismissal with prejudice of all the claims is appropriate. Plaintiff's claims are jurisdictionally barred by Eleventh Amendment immunity, and he fails to state a cognizable claim. No amendment would remedy these deficiencies. Therefore, Plaintiff's claims are dismissed without leave to amend.

## CONCLUSION

ACCORDINGLY, Defendant's Motion [filed July 12, 2022; ECF 13] is **granted**. Plaintiff's claims are dismissed with prejudice.

The Clerk of Court shall enter Final Judgment in Defendant's favor and close this case.

Entered this 3rd day of November, 2022, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty

Michael E. Hegarty
United States Magistrate Judge